(No. 19197.

ALENIA BELLE McCORD *et al.* Appellees, *vs.* BELLE McCORD ROBERTS, Appellant.

*Opinion filed February 20, 1929—Rehearing denied April 5, 1929.*

Robert E. Wright, for appellant.

Hill & Bullington, H. W. Park, and H. A. Meyer, for appellees.

Mr. Justice Stone delivered the opinion of the court:

Appellees, minor children of C. Ernest McCord, deceased, by Bessie McCord, their mother, as next friend, filed a bill in the circuit court of Bond county seeking to set aside two certain deeds executed by Alenia McCord to appellant and to remove appellant as trustee under the will of Alenia McCord, referred to herein as Mrs. McCord. The grounds set out in the bill are that a fiduciary relation existed between the grantor and the grantee in the deeds and that the grantor was not mentally capable of making a deed. On answer the matter was referred to a master in chancery, who reported recommending that the prayer of the bill be allowed. This report was approved and a decree was entered setting aside the deeds between Mrs. McCord and appellant and removing the latter as trustee under the will. Appellant brings the cause here for review. She makes no complaint of the decree removing her as trustee under the will nor as to setting aside one of the deeds, the same being for a 240-acre farm, but contends that the chancellor erred in setting aside the other deed, which was to certain city property in the city of Greenville.

The bill alleges that on July 21, 1927, Mrs. McCord owned in fee simple a certain residence property in the city of Greenville, Illinois, described in the bill, and a certain farm of 240 acres in Bond county. On March 21, 1925, she executed her last will, in which she devised and bequeathed all her property, except a few small bequests, to appellant in trust for the use and benefit of her son, C. Ernest McCord, and his children. Appellant was a niece of the testatrix and ingratiated herself into her confidence to the

extent that a fiduciary relationship existed between them. C. Ernest McCord was the only son of the testatrix. He died on October 26, 1926, leaving Bessie McCord, his widow, and the minor appellees, his children, as his only heirs-at-law. On July 21, 1927, when Mrs. McCord executed the deeds to appellant she was seventy-eight or seventy-nine years old, very feeble, physically incapacitated, mentally weak, and susceptible to the influence and control of appellant. The deeds were made at the solicitation of and while under the undue influence of appellant by reason of the fiduciary relationship existing between them. The deeds were made to Mrs. McCord and appellant as joint tenants. Certain property at Pueblo, Colorado, was also deeded to appellant, but that property is not involved in this cause. These are allegations of the bill. It is also alleged that appellant went to the home of Mrs. McCord for the purpose of having the deeds executed, and as soon as they were delivered and recorded she returned to California, where she was at that time residing. Mrs. McCord died September 2, 1927, less than two months after the deeds were executed, leaving appellees, her grandchildren, as her only heirs-at-law. Her will was admitted to probate on October 24, 1927. The bill also charges that appellant acted in bad faith and abused and betrayed the confidence reposed in her by Mrs. McCord.

The answer admits the title to the property involved in the two deeds to have been in Mrs. McCord on July 21, 1927, but alleges as to the city property that it belonged to appellant; that in 1911 her maternal grandfather deeded the city property to her; that she later, without consideration, conveyed the same to John W. McCord, the husband of Alenia, and that John by his will devised the same to appellant; that Mrs. McCord had frequently expressed her regret at living in a house not belonging to her, and in 1924, for the purpose of making more pleasant and enjoy-

able the life of Mrs. McCord, appellant conveyed the city property to her without consideration, and that Mrs. McCord had several times stated that she was holding the title in trust for appellant. The answer denies undue influence or fiduciary relationship, but avers that Mrs. McCord voluntarily and without the request of appellant conveyed the city property to herself and appellant as joint tenants, though appellant was in fact and in law the owner of the fee thereto. The answer states that the title to the 240-acre farm conveyed to her was received and held by her under a verbal agreement with the grantor that she hold the same in trust for the minor appellees, and that appellant, in the execution of the trust, should use her best judgment and discretion in applying the income to the promotion of the best interests of the minor appellees. The answer denies any breach of confidential relationship existing between herself and Mrs. McCord or any intention to take advantage of appellees.

The evidence taken before the master shows that appellant's mother, a sister of Mrs. McCord, died when appellant was but a child. Her aunt raised her as she did her own child and a warm affection existed between them at all times. Appellant was given a thorough education, and after having reached maturity she removed to California, where she has since resided and become a business woman, being interested in newspaper publications, real estate business and gold mines. The evidence shows that Mrs. McCord inherited something over $50,000 from her father. She was very frugal and spent little money. She owned several hundred acres of land in Louisiana, which she deeded to appellant, who traded it for California property. The evidence does not show that this is a part of the estate of Mrs. McCord. In 1926 Mrs. McCord sold her equity in a farm of 240 acres and realized the sum of $5500 therefrom. She purchased $5000 of city improvement bonds from a bank in the city of Greenville, and early in 1927

she requested the bank to re-purchase the bonds, which it did, and she thereupon sent the money to appellant. The evidence does not disclose what became of it. Appellant received also $2000 to pay off a loan on certain Pueblo, Colorado, property for Mrs. McCord, and later wrote her that the woman to whom it was payable would not take the payment. The loan was not paid but the money is not among the assets of the estate. On March 21, 1925, when Mrs. McCord made her will, appellant was present. This will gave all of the property, including the city property now claimed by appellant, to appellant in trust for the son and grandchildren of the testatrix. The evidence shows that appellant made no remonstrance or complaint and offered no objection to this method of disposing of the city property by Mrs. McCord. The evidence also shows that three days before the deeds in question were executed appellant came from California to the home of Mrs. McCord. While in Greenville she visited the office of an attorney and made an appointment with him for Mrs. McCord. On the third day after her arrival, she, with Mrs. McCord, went to the office of the attorney and the deeds were drawn and signed. She left for California the same day. The deeds were the ordinary form of warranty deed. The evidence of the attorney is that nothing was said as to the character of the transfer or that appellant was taking the property by either of the deeds as trustee. Shortly before her death Mrs. McCord told her banker, C. E. Hoiles, that she had executed the deeds to appellant in carrying out the intention of the trust which she had provided in her will. A number of witnesses testified that in their opinion she was not at that time competent to make a deed. Appellant's testimony tends to show that she was capable of making a deed, and letters were introduced showing the relationship and affection existing between her and appellant.

Appellees offered witnesses who testified that at the time of Ernest McCord's funeral appellant attended with

G. A. Smith, whom she introduced as her business manager, who made inquiry about Mrs. McCord's property. Appellant and Smith attended the funeral of Mrs. McCord and thereafter stated to a witness that her will did not amount to anything for the reason that the property had been deeded to appellant and that no provision had been made for the children, and that if the deeds "stick, the property is mine;" that Smith, who was present, said, "The deeds will have to stick; we will make them stick." Smith testified for appellant that he had talked with Mrs. McCord in Pueblo and that she told him that the property in Pueblo really belonged to Belle, (meaning appellant,) and that he had another conversation with her in California about her Greenville property, in which she told him that that property belonged to her daughter, appellant; that she told him that Bessie, the mother of appellees, did not have any sense; that she abused her so terribly that she could hardly live in the same house with her; that Mrs. McCord was afraid she might get her hands on some of the property and the children could not get it, and that she was going to turn it over to appellant. This witness was so thoroughly discredited that the master reported that he was unworthy of belief, and the chancellor was justified in taking that view of his testimony.

Counsel for appellant contends the facts do not establish that a fiduciary relationship existed between her and Mrs. McCord. The record abundantly establishes that such a fiduciary relationship did exist. A fiduciary relationship extends to every possible case in which there is confidence reposed on one side and resulting superiority on the other. The relation and the duties involved are not necessarily legal. They may be moral, social, domestic or merely personal. If the confidence in fact exists and is reposed by one party and accepted by the other the relation is fiduciary, and equity will regard dealings between the parties according to the rules which apply to such relation. *Duncan* v.

*Dazey,* 318 Ill. 500; *Feeney* v. *Runyan,* 316 id. 246; *Higgins* v. *Chicago Title and Trust Co.* 312 id. 11; *Beach* v. *Wilton,* 244 id. 413.

It is next contended that the deeds were not procured by undue influence of appellant. This is not, alone, a bill to set aside deeds on the ground of undue influence or of the mental incapacity of the grantor, but on the ground that a fiduciary relationship existed, of which appellant had taken advantage to her own gain. Where a fiduciary relationship exists between a grantor and grantee in a deed the burden is upon the grantee to prove that the transaction was entirely fair in every particular. Courts of equity will scrutinize with jealous vigilance transactions between parties occupying fiduciary relations toward each other, and the burden of proof is on the beneficiary in such case to establish not only that the transaction was fair but that it did not proceed from undue influence, for the abuse of confidence or influence arising out of a fiduciary relationship will not be permitted to prevail even though the transaction could not be impeached if no confidential relation existed. *Fish* v. *Fish,* 235 Ill. 396; *Dowie* v. *Driscoll,* 203 id. 480; *Thomas* v. *Whitney,* 186 id. 225; *Sands* v. *Sands,* 112 id. 225.

Appellant also contends that the question of the existence of a fiduciary relationship is not material in this case for the reason that the grantor did not lack mental capacity. The law is that old age, eccentricity, or even partial impairment of mental capacity, is not necessarily sufficient to set aside a deed; that if the grantor had sufficient mental capacity to comprehend the nature of the transaction and to protect his own interest the deed will not be set aside for want of mental capacity. (*Bordner* v. *Kelso,* 293 Ill. 175; *Greene* v. *Maxwell,* 251 id. 335; *Noble* v. *Noble,* 255 id. 629; *English* v. *Porter,* 109 id. 285.) In cases where the evidence shows a fiduciary relationship, mental weakness, old age, ignorance, pecuniary distress, and the like, may be con-

sidered as an incidental but not necessary or essential influence causing the transaction. Nor is undue influence a necessary part of the circumstances except so far as it is to be implied from the conception of a fiduciary relationship. But in all cases where the fiduciary relationship exists, during which the dominant party through a transaction between them obtains material· benefit, the burden rests upon such party to show by clear and convincing proof that he or she did not betray the confidence reposed by the other party. If that burden is not discharged the transaction will be set aside in equity. (*Mors* v. *Peterson,* 261 Ill. 532; *Beach* v. *Wilton, supra.*) In this case we are of the opinion that appellant did not discharge the burden resting upon her to remove the suspicion of personal interest in her transactions with Mrs. McCord. No trust provisions were inserted in either deed, though she admits that the farm was taken by her in trust for the minor appellees. Nothing was said at the time in the presence of the attorney drawing the deeds that either property was to be held in trust by appellant. Two years previous to that time Mrs. McCord had made a will, by which she devised the same property to appellant as trustee for the· minor appellees and their father, then living. The evidence shows that nothing was said at that time by appellant tending to indicate that the Greenville city property belonged to her, although it was included in the will. The decree of the chancellor was justified by the evidence.

Error is assigned on the admission of evidence. We have examined this assignment in detail, and, while incompetent testimony appears in the record, the chancellor is presumed to have based his decree only on compctent testimony, of which there was sufficient in the record to support the decree.

There being no error in the record the decree will be affirmed.                                          *Decree affirmed.*