(No. 30181.—

LENNIE E. CLARK, Appellee, *vs.* LUTHER R. CLARK *et al.,* Appellants.

*Opinion filed November 20, 1947—Rehearing denied Jan. 15, 1948.*

ALBERT E. ISLEY, and NORMA EATON, both of Newton, for appellants.

C. A. WILLIAMS, of Casey, and DALE WILSON, and HOMER KASSERMAN, both of Newton, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Lennie E. Clark, appellee, filed her complaint in the circuit court of Jasper County against the appellants, Luther R. Clark, her brother, and Elsie Clark, his wife, for the partition of 400 acres of land in that county, of which she claimed to be the equitable owner of an undivided 5320/10,000 part by reason of a resulting trust therein. In her prayer for relief she requested that the court set aside and declare void the deed and lease alleged to have been executed by her to 160 acres of said premises.

Amos Clark, an elder brother, was the owner of this 400 acres at the time of his death on June 21, 1941, and he and the parties to this suit were residing thereon as one family. One hundred forty acres of the land formerly belonged to their father, and after his death in 1915, Amos acquired the same by purchase from the other heirs. The father lived many years on this land and had reared all of his children there. Amos, who was a bachelor, and Lennie,

who is a spinster and was sixty-one years of age at the time of her brother's death, had never lived any place else. Luther, also, except when working away from home at different times prior to his marriage, had never lived elsewhere than on this farm.

Amos died intestate, leaving three sisters and five brothers as his only heirs-at-law. At the time of his death he was indebted to his sister Lennie upon a note, dated June 15, 1932, for the principal sum of $3000, with interest from date at six percent, upon which no payment of principal or interest had ever been made. In August, 1941, after the death of Amos, his heirs entered into an arrangement whereby Luther purchased this 400 acres of land for the sum of $10,000, and applied in part payment thereof the amount due to Lennie on the note for principal and interest, in the total sum of $4653. He also applied on the purchase price of $10,000 Lennie's distributive share thereof, after deducting from said purchase price the amount of the note and the sum of $11 paid for revenue stamps, which distributive share amounted to $667, and paid in cash to each of the heirs, other than himself and Lennie, the sum of $667. The heirs, including Lennie, then executed a deed dated August 15, 1941, conveying the 400 acres of land to Luther and his wife in joint tenancy.

A few days later, Luther, with his wife and plaintiff, went to the office of the attorney who had assisted in the settlement of their brother's estate, and he prepared two warranty deeds and a lease which were signed and delivered. The first instrument was a warranty deed from Luther and his wife conveying to plaintiff 160 acres of the land here in controversy, the same being that portion of the land upon which the home and outbuildings were located. The next was a warranty deed from plaintiff reconveying to Luther and his wife this same 160 acres, but reserving to herself a life estate in the premises. The next and last instrument included in the transaction was a

lease of the same 160 acres from plaintiff to Luther and his wife for a term of twenty years, for a consideration of $1 per year to be paid to her in cash and their agreement to provide her a home on the premises, pay the taxes on the property and keep it insured and in a reasonable state of repair. These instruments were not recorded, but the deed from the plaintiff and the lease were delivered to Luther and remained in his possession until produced in evidence at the trial. The evidence is conflicting as to what became of the deed to the plaintiff.

After this transaction they continued to live on the farm without any apparent trouble until the summer or fall of 1945, when plaintiff complained to another brother that she did not have her deed and asked him to help her get it. This brother testified that he asked Luther about the deed and was told he did not have it. There was considerable testimony concerning the lost deed. However, defendants advised plaintiff if she could not locate the deed they would make her another.

December 2, 1945, plaintiff left the premises for a visit and never returned to the farm, filing this suit the following April. She alleged in her complaint the conveyance of the 400 acres of land for $10,000, and that she furnished $5320 of the said purchase price. She also alleged that the defendants, in consideration of her advancement to them of the $5320, executed a conveyance to her of the said 160 acres, which deed was never delivered, and that on February 15, 1946, the defendants executed and delivered to plaintiff's attorney a deed conveying to plaintiff the 160 acres, reserving to the grantors one half of all oil, gas and minerals on, under or produced from the premises, which deed stated that it was made to supply an alleged lost deed from the grantors to the grantee, which had been previously signed, acknowledged and delivered. She also alleged she had been informed by defendants that she had executed and delivered to them a deed of conveyance and

a lease for the said 160 acres, that in said deed she reserved a life estate in the premises conveyed, and that said lease was for a period of 20 years and based upon a consideration that the defendants care and provide for her during that period of time. Plaintiff further alleged that she had no knowledge or recollection of ever having executed any such deed of conveyance to the defendants and that the same, if executed, was wholly without consideration. She also alleged that at the time of her alleged execution of the deed and lease, she was impaired in health in mind and body, and incompetent to transact ordinary business and incompetent to execute said deed and lease, that at said time she was residing with the defendants as a member of their household, that she reposed trust and confidence in them and they handled all of her property and transacted all of her business affairs for her, that she was easily persuaded and not in a condition to understand the nature and purport of the deed and lease alleged to have been executed by her, and that she was overpersuaded and unduly influenced by the defendants to execute the same.

Plaintiff in her complaint prayed that said deed and lease be delivered up and cancelled, and tendered reconveyance of the premises which defendants had conveyed to her, if required by the court in order to do equity between the parties. She also prayed that title to an undivided 5320/10,000 part of said 400 acres of land be declared impressed with a trust in her favor, and that the land be partitioned between herself and the defendants in accordance with their respective rights. The complaint also contained a count at law alleging that the defendants were indebted to the plaintiff in the sum of $5320 for money had and received by them from her on August 15, 1941, and asking judgment for that amount with legal interest thereon.

The defendants answered admitting their purchase of the 400 acres from the heirs of Amos Clark and the con-

tribution of plaintiff to the purchase price thereof, but set up that prior to the execution of the deed from the heirs, the plaintiff had told them she wanted to live with them in the home on the premises where they had lived together since the year 1914, and wanted them to convey to her the 80 acres on which they lived, known as the homestead 80, and that she would reconvey the same to them, reserving to herself a life estate therein; that they thereupon told her that they would convey not only the 80 acres but 160 acres of the land, and it was then agreed between them that she would reconvey the 160 acres to the defendants, reserving to herself a life estate, that the amount due her upon said note given by Amos Clark in his lifetime should be applied upon the purchase price, that plaintiff would have no further claim against defendants on account thereof, and that plaintiff and defendants would continue to live together as one family on the homestead. The answer then alleges the execution and delivery of the two deeds and the lease of the 160 acres, but denies all charges of incompetency, undue influence or overpersuasion, and avers that the plaintiff was competent to and did fully understand the said transaction and executed said instruments voluntarily and of her own accord, after the same had been read and fully explained to her by the attorney who prepared them.

The defendants further allege in their answer that, in pursuance of said conveyance and lease, the plaintiff continued to reside in the home with the defendants and was cared for and maintained by them in accordance with the terms of their agreement until taken away on December 2, 1945, by a sister and niece, by whom, they allege upon information and belief, the plaintiff has been prevented from returning to their home. The defendants aver that they have in all respects carried out and performed the terms of the lease and have been and are willing to comply therewith. They deny that the plaintiff has any interest

in or title to said premises, except as provided in said conveyances and lease, and deny that she is entitled to partition or that they are indebted to her in any sum whatever.

The chancellor heard the evidence and entered a decree finding that defendants had purchased for the sum of $10,000 the 400 acres of land described in the complaint, and had received a deed of conveyance therefor, that at the time of the execution of said deed the sum of $5320 was advanced by the plaintiff to the defendants for payment on said purchase price of $10,000, and was by them so applied; that within a few days thereafter the defendants took the plaintiff to the office of an attorney where they had prepared and executed a deed from themselves to plaintiff for 160 acres of said land, a deed from plaintiff reconveying to them the 160 acres, with a reservation of a life estate therein to the grantor, and a lease from plaintiff to defendants of the 160 acres for a term of 20 years, for a consideration of $1 per year and the agreement of the lessees to provide the lessor a home on the premises, pay the taxes thereon, and keep the same insured and in reasonable repair; that at the time of the execution of said deeds and lease the plaintiff reposed great confidence and trust in the defendants; that the consideration for said deed and lease executed by the plaintiff was inadequate; that the transaction between the plaintiff and defendants was not equitable and just and deprived plaintiff of her property while a fiduciary relationship existed between the parties; and that the plaintiff did not have competent and independent advice relative to said deeds and lease prior to the time of their execution. The decree cancelled and set aside as null and void the lease and all deeds between the parties to the 160 acres of land, declared that the defendants held title to an undivided 5320/10,000 part of the 400 acres as trustees for the plaintiff, and awarded partition.

One of the contentions made by defendants in seeking a reversal of the decree is that the evidence is not sufficiently

clear and convincing to establish the existence of a fiduciary relationship between them and the plaintiff. A fiduciary relation does not arise merely from the fact that parties are brother and sister. (*Scherman* v. *Scherman*, 395 Ill. 574.) Nor does the law assume that a conveyance from a sister to a brother is fraudulent on account of the kinship. A fiduciary relationship exists as a matter of law between parties who sustain the position toward each other of attorney and client, principal and agent, guardian and ward, and the like. (*Wennerholm* v. *Wennerholm*, 382 Ill. 254.) Also, a fiduciary relationship exists in every case where, in fact, trust and confidence are reposed by one person in another, who, as a result thereof, gains an influence and superiority over the other. (*Wennerholm* v. *Wennerholm*, 382 Ill. 254; *Steinmetz* v. *Kern*, 375 Ill. 616.) Where a fiduciary relationship does not exist as a matter of law, the relationship must be proved by clear and conclusive evidence, when claimed as a basis to establish a constructive trust. (*Galvin* v. *O'Neill*, 393 Ill. 475.) The question whether a fiduciary relation exists between a brother and sister so that confidence is reposed by the sister in the brother will depend upon all the facts and circumstances of the particular case.

The question whether the evidence in this case establishes, clearly and convincingly, that the defendant Luther R. Clark occupied a fiduciary relationship to his sister, the plaintiff, at the time she executed the deed and lease, is one of fact for the determination, in the first instance, of the chancellor who heard the testimony in open court and heard the parties and all of their witnesses. In this case the chancellor saw the witnesses and heard them testify. He was in a much better position to determine the facts than is this court. The rule has many times been announced by this court that when a chancellor has heard the testimony in open court and so sees and hears the witnesses, this court will not reverse his findings of fact unless

they are palpably against the weight of the evidence. (*West* v. *LePage*, 381 Ill. 131.) We find nothing in the record which leads us to believe that the chancellor's holding as to the existence of a fiduciary relationship is palpably against the weight of the evidence, or contrary to the manifest weight of the evidence.

At the time plaintiff executed the deed and lease she had lived with her brother Luther as a member of his family for many years. There was during that time no disagreement or lack of harmony among them. Arthur Paul Clark, a son, and Ellen Britton, a daughter, of the defendants, testified to statements made by plaintiff in August, 1941, prior to the purchase from the heirs of Amos, which show clearly the absolute trust and confidence which she reposed in the defendants.

When the existence of a fiduciary relation has been established the law presumes that any transaction between the parties, by which the dominant party has profited, is fraudulent. This presumption is not conclusive, but may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him. The burden rests upon the dominant party to produce such evidence, and if the burden is not discharged the transaction will be set aside in equity. (*McCord* v. *Roberts,* 334 Ill. 233.) In the absence of evidence rebutting the presumption of fraud which the law implies from the existence of a fiduciary relationship and a transaction between the parties whereby the dominant party has received material benefit, a court of equity, in order to remedy such fraud and work out justice between the parties, will fasten a trust in favor of the defrauded party upon the property in the hands of the donee which he has received as a result of such transaction. This is called a constructive trust because it is raised by construction out of the circumstances of the relationship and the implied fraud attending the transaction.

The mere existence of a fiduciary relation prohibits the one trusted from seeking or obtaining any selfish benefit for himself and affords a basis for fastening a constructive trust upon the property, in the absence of a sufficient showing that the transaction was not the result of, or attended by, an abuse of the confidence reposed. *Suchy* v. *Hajicek,* 364 Ill. 502.

Defendants contend the evidence shows that the plaintiff was not mentally incompetent at the time she executed the deed and lease and also shows that her execution of such instruments was not induced by undue influence. While the complaint in this case seeks to set aside the deed and lease on several different grounds, namely, those of undue influence on the part of the defendants, mental incapacity of the plaintiff, and the existence of a fiduciary relationship of which defendants had taken advantage to their own gain, it is not essential in order to avoid these instruments that plaintiff establish all of the grounds alleged. In cases where the evidence shows a fiduciary relationship, neither undue influence nor mental incapacity is necessary to be established in order to avoid the transaction. (*McCord* v. *Roberts,* 334 Ill. 233.) The question in all such cases is whether the dominant party who has obtained the benefit of the transaction has exercised good faith and not betrayed the confidence reposed in him. If so, the existence of a fiduciary relation will not invalidate the conveyance; but, as above pointed out, the burden of establishing the fairness and good faith of the transaction rests upon the one receiving the benefit thereof. If a conveyance was not procured through improper means attended with circumstances of oppression or overreaching, but was entered into by the grantor with full knowledge of its nature and effect and because of his or her deliberate, voluntary and intelligent desire, the existence of a fiduciary relation does not invalidate the transaction. (*Metanic* v. *Krajach,* 392 Ill. 547.) Contracts and transactions be-

tween parties to a fiduciary relation, if open, fair and honest when deliberately made, are as valid as contracts between other parties. *Schueler* v. *Blomstrand,* 394 Ill. 600.

In this case we are of the opinion, after a careful examination of the entire record, that the defendants have not discharged the burden resting upon them to show by clear and convincing evidence that they acted fairly and in good faith in obtaining the deed and lease from the plaintiff or that the same were the result of her voluntary and intelligent desire, or that the transaction was equitable and just to her. More than half of the purchase price for the 400 acres was contributed by plaintiff, and, as a result of her transaction with the defendants, the only interest she had in the land was a life estate in 160 acres, which was leased to the defendants for twenty years in consideration of their promise to give her a home on the premises. Thus, in effect, she had nothing in return for her $5320, except the right to continue to live with the defendants as a. member of the family the same as she did before. The undisputed testimony was that plaintiff did much of the work of the household, that she was always working, and the defendant Elsie Clark on cross examination testified that the plaintiff did as much work around the place as a hired girl would do. In connection with the inadequacy of the consideration, it can scarcely be claimed that this transaction was equitable and just to the plaintiff.

The defendants set up in their answer that it was the plaintiff who suggested the plan of a conveyance from them to her and a reconveyance of the same land by her to them, reserving for herself a life estate, and both of the defendants testified that the plaintiff joined with Luther in giving instructions to Milo Yelvington, the attorney who prepared the deeds and lease of the 160 acres, as to the manner in which they should be drawn, that it was she who directed that the lease should be made for a term of

twenty years, and that she fully understood the entire transaction and so informed the attorney who wrote the deeds and lease. Plaintiff testified as to that occasion, "Yes, I remember coming down to Milo Yelvington's office to sign some papers. I don't know the date. It was when we was settling up the estate after Amos died and he's been gone for five years anyhow. I come with Luther and his wife. Well they said we'd go down and take care of the business—what there was to be done. I don't remember everything that was said. They wanted to do something about fixing the settlement." She further testified that the defendants did the talking, that they made her a deed while she was there, which she thought was for the home,—"all east of the school house." She denied she told them that all she wanted was a life estate, and denied ever knowing that she had signed a deed, but stated that she remembered signing a lease for Luther to farm the place. Her evidence, if the same is to be believed, proves clearly that she thought the defendants were conveying to her the home place, that is "all east of the school house," that she did not understand that she was getting only a life estate, but thought she was obtaining the full title thereto and that the instruments executed on that occasion were necessary in order to give her the home place and allow Luther to farm it, and that neither the defendants, the attorney who prepared the deeds and lease, nor anyone else explained to her the nature and effect of the transaction or informed her that as the result thereof she obtained only a life estate in the 160 acres.

The record shows clearly that the plaintiff acted in the matter without obtaining counsel or advice in regard thereto from anyone other than her brother Luther. The defendants insist that she had competent and independent advice from the attorney who prepared the instruments and in whose office the same were executed, but the evidence shows clearly that he acted only as the scrivener in

the matter. He gave her no advice in regard to the transaction and did not purport to represent her or protect her interests. We cannot escape the conclusion that the plaintiff was overreached and that the defendants abused the confidence she reposed in them.

The defendants contend that no resulting trust arose out of plaintiff's contribution of $5320 to the purchase price of $10,000 for the 400 acres of land. With this we cannot agree. They cite authority for the proposition that if the person whose money was used to purchase the land intended at the time of the conveyance to confer a beneficial interest upon the grantee, he cannot put a different construction upon the transaction at a subsequent time and claim a resulting trust. Their argument is that the plaintiff never intended to purchase or become the owner of an undivided 5320/10,000 part of the 400 acres, but at the time of the conveyance there was an agreement between her and the defendants that she was to have as her interest in the land a life estate in the 160 acres. While it is true that if the person whose money is used to make the purchase intends to confer a beneficial interest on the grantee, that is, if he intends the property conveyed to be a gift to the grantee, then no resulting trust will arise, but here there is no claim or intimation on the part of anyone that plaintiff, at the time she furnished her contribution of $5320 to the purchase price, had any intention of making a gift of the same, or any part thereof, to the defendants. The testimony of both the plaintiff and the defendants is that she and Luther "put their money together and bought the place." Such an agreement as defendants claim, even if the same had existed, would amount to no more than a parol agreement in regard to partition of the land in the future. In this State the law has long been settled that where two persons together advance the price, and title is taken in the name of one of them, a trust results in favor of the other to such proportion of the property as

606

is equal to the proportion of the consideration contributed by him. (*Van Buskirk* v. *Van Buskirk,* 148 Ill. 9.) The burden of proof was on the plaintiff to establish a resulting trust by proving that her money was paid for the purchase of the 400 acres, and such proof must be clear, strong, unequivocal and beyond reasonable doubt: (*Hill v. Berger,* 302 Ill. 312.) But in this case, the defendants admitted that plaintiff's money to the extent of $5320 was paid for the purchase of the 400 acres, and no contention was ever made by them that her advancement of this sum was either a gift or a loan. We think the facts in this record bring the case clearly within the doctrine of resulting trusts.

The decree of the circuit court, in our opinion, is correct, and it is therefore affirmed.

*Decree affirmed.*