2016 IL App (3d) 140163

Opinion filed August 1, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF THOMAS F. SHELTON, Deceased, (Ruth Ann Alford, Executor, Petitioner-Appellant, v. Rodney I. Shelton, Respondent-Appellee). | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit Grundy County, Illinois<br><br>Appeal No. 3-14-0163 Circuit No. 13-P-17<br><br>Honorable Lance R. Peterson Judge, Presiding |

| | | |
|---|---|---|
| RUTH ANN ALFORD, as executor of the ESTATE OF DORIS E. SHELTON,<br><br>    Plaintiff-Appellant<br><br>v.<br><br>RODNEY I. SHELTON,<br><br>    Defendant-Appellee. | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit Grundy County, Illinois<br><br>Appeal No.  3-14-0685 Circuit No.  14-L-13<br><br>Honorable Lance R. Peterson Judge, Presiding |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice Carter concurred in part and dissented in part, with opinion.
Justice Schmidt concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1      In these consolidated cases, Ruth Ann Alford, as the executor of the estates of her late

parents, Thomas and Doris Shelton, sued her brother, Rodney Shelton, to recover real estate that

she alleged Rodney had wrongly received from both estates and for damages resulting from Rodney's alleged violation of his legal duties as successor power of attorney for Doris. In case No. 3-14-0144, Ruth Ann, as executor of Thomas's estate, filed an amended estate citation seeking the return to Thomas's estate of a farm that Thomas had conveyed to Rodney in December 2011. Ruth Ann alleged that the conveyance was presumptively fraudulent because it occurred while Rodney was named as the successor power of attorney under Thomas's Illinois Statutory Short Form Power of Attorney for Property (POA), and while Doris, Thomas's primary power of attorney under the POA, was incompetent. Rodney moved to dismiss the complaint under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2010)). The trial court granted Rodney's motion to dismiss under section 2-619 because it found that Ruth Ann had failed to establish that Doris was incompetent at the time of the conveyance and that Rodney owed Thomas a fiduciary duty at that time.

¶ 2        In case No. 3-14-0685, Ruth Ann, as executor of Doris's estate, sued Rodney for damages allegedly caused by Rodney's breach of a duty to Doris as a successor power of attorney. Ruth Ann alleged that, while Rodney was named as a successor power of attorney for Doris, and while Doris was incompetent to manage her own affairs, Rodney colluded with Thomas, Doris's primary power of attorney, to transfer Doris's interest in certain real estate to Rodney in violation of section 2-10.3(b) of the Illinois Power of Attorney Act (Act) (755 ILCS 45/2-10.3(b) (West 2010). Rodney moved to dismiss the complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)). The trial court granted Rodney's motion and found as a matter of law that, at the time of the transaction at issue, Rodney had no duty to Doris. This appeal followed.

¶ 3                                                    FACTS

2

¶ 4      On January 18, 2005, Thomas Shelton executed an Illinois Statutory Short Form Power of Attorney for Property (POA) appointing his wife, Doris Shelton, as his "attorney-in-fact" or "agent." The POA form states that Doris has the power to act for Thomas and in his name in any way Thomas could act in person with respect to several enumerated powers, including: (1) the power to "pledge, sell, and otherwise dispose of any real or personal property without advance notice" to Thomas; (2) the power to make Estate transactions, gifts, and "all other property powers and transactions"; (3) the power to name or change beneficiaries or joint tenants; and (4) the power to exercise trust powers. It was a "durable" power of attorney in that it provided that Thomas's appointed agent "may exercise the powers given here throughout [Thomas's] lifetime, after [he] become[s] disabled" (unless Thomas or a court otherwise limited or terminated the agent's power, which did not occur).

¶ 5    In paragraph 8, Thomas's POA provided:

> "If any agent named by me shall die, become incompetent, resign or refuse to accept the office of agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such agent:  my son Rodney I. Shelton -- my daughter Ruth Ann Alford.
>
> For purposes of this paragraph 8, a person shall be considered to be incompetent if and while the person is a minor or an adjudicated incompetent or disabled person or the person is unable to give prompt and intelligent consideration to business matters, as certified by a licensed physician."

¶ 6      On the same day Thomas executed his POA, Doris executed a substantively identical durable POA for property appointing Thomas as her agent (or attorney-in-fact) and Rodney and Ruth Ann, successively, as successor agents.

¶ 7        Thomas and Doris owned a farm together as joint tenants.  On December 1, 2011, Thomas executed quitclaim deeds conveying his and Doris's interest in the farm to Rodney and Rodney's wife.  Thomas conveyed his own interest in the farm on his own behalf, and he conveyed Doris's interest in the farm as attorney-in-fact under Doris's power of attorney. On the same day, Thomas executed another quitclaim deed conveying to Rodney and Rodney's wife another farm that was titled in Thomas alone.

¶ 8        On December 2, 2013, Thomas's estate (by its executor, Ruth Ann), filed an amended citation under section 16-1 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/16-1 (West 2012)) against Rodney and his wife to recover the farm originally owned by Thomas.  The citation alleged that, at the time Thomas conveyed the farm to Rodney, Rodney was Thomas's agent under Thomas' POA because: (1) Thomas's POA designated Rodney as successor POA; and (2) at the time of the conveyance, the predecessor POA (Doris) was incompetent.  In support of the latter assertion, the estate alleged that: (a) "[f]rom March 2011 Doris *** was observed to have confusion and lack of short term memorization [*sic*]"; (b) "[m]edical treatment records through, and beyond, December 1, 2011 reflect Doris's *** continued confusion and cognitive impairment"; (c) "[a]bnormal EEG of 9-15-2011 found 'features that would be consistent with diffuse cerebral dysfunction' "; (d) "[o]n or about October 4, 2011, Doris *** was diagnosed with dementia"; (e) "[r]ecords for Doris *** thereafter reflect progressive decline in cognitive level, disorientation and hallucinations."  The complaint alleged that, based on "the progressive effects of [Doris's] diagnosed Dementia as set forth above," Doris "was unable to manage her affairs due to said mental deficiency and was incompetent at the time of the execution of the foregoing deeds."  The complaint did not attach a physician's report certifying that Doris was unable to conduct her business affairs or otherwise incompetent.

¶ 9　　　　　The complaint further alleged that, due to Doris's incompetence at the time the deeds at issue were executed, "Rodney *** had succeeded to and was the POA under the power of attorney which created a fiduciary relationship between Thomas *** and Rodney." Therefore, the complaint maintained, the conveyances from Thomas to Rodney were "presumptively fraudulent" and Rodney was required show by clear and convincing evidence that the "transaction was fair and equitable." Absent such showing, the complaint asked that the deeds be set aside.

¶ 10　　　　　On December 11, 2013, Rodney filed motions to dismiss the estate's amended petition for citation under sections 2-615 and 2-619(a)(9) of the Code. The latter motion noted that Doris had not been adjudicated incompetent or declared incompetent by a physician's certification, as required by paragraph 8 of Thomas's POA. Therefore, Rodney argued, Rodney never assumed a fiduciary duty to Thomas under the POA. Moreover, Rodney contended that "[t]he power of attorney at issue and applicable principles of Illinois law do not permit a retroactive adjudication of incompetence or the creation of a fiduciary relationship *nunc pro tunc*." The estate filed a response to Rodney's motions to dismiss and Rodney filed a reply.

¶ 11　　　　　On January 30, 2014, the estate filed the "Physician's Report" of Dr. Daniel M. Jurak, Doris's former treating physician, as a supplemental exhibit to its response to Rodney's motions to dismiss. In his report, Dr. Jurak stated under oath that Doris had suffered from "[d]ementia, diagnosed on or before October 4, 2011, associated with Parkinson's Disease with a start of care date of October 13, 2011." Dr. Jurak further stated that Doris had an "onset of confusion in March 2011" and had "exhibited continuing diminishment of mental and cognitive ability with progressive worsening through the date of her death in 2012." Dr. Jurak opined that "[a]s of, and including, December 1, 2011, *** Doris Shelton was incompetent, unable to manage her

5

personal affairs, unable to give prompt and intelligent consideration [to] her personal affairs and unable to give prompt and intelligent consideration to business matters." Dr. Jurak stated that he based these observations on: (1) "[his] own examinations(s), continuing care and observations(s), of Doris Shelton from 2008 through the date of her death"; and (2) "[r]eview and examination of treatment records kept in the ordinary course of business, created by persons with independent knowledge of their personal observations and assessments, made at or near their personal observations and assessments[,] *** records of which [Dr. Jurak had] found to be accurate and reliable."

¶ 12    The trial court held a hearing on Rodney's motions to dismiss on February 4, 2014. After reading the parties' briefs and hearing oral arguments, the trial court denied Rodney's motion to dismiss under Rule 2-615 but granted his motion to dismiss under rule 2-619(a)(9). The court reasoned that, at the time of the conveyance on December 1, 2011, no doctor had certified that Doris was unable to manage her financial affairs, and the doctor's certification that "would trigger that POA" occurred two years after the event. The court concluded that "I don't think you can retroactively a year or two years later submit a certification *** that is specifically referred to in the POA and have retroactive effect."

¶ 13    On March 24, 2014, Ruth Ann, as executor of Doris's estate, filed a complaint against Rodney seeking damages for Rodney's alleged breach of fiduciary duty to Doris. The complaint alleged that, on December 1, 2011, Thomas violated his duty as Doris's agent under Doris's POA by transferring all of Doris's interest in the farm to Rodney and Rodney's wife without reserving a life estate in Doris at a time when Doris was incompetent and in need of income from the property. The complaint further alleged that Rodney "participated in such breach of fiduciary duty" by Thomas in violation of section 2-10.3 of the Act (755 ILCS 45/2-10.3 (West 2010)) by

6

failing to notify Doris of such breach and by failing to take action to safeguard Doris's best interests. The complaint sought damages "in an amount not less than $50,000" plus attorney's fees and court costs.

¶ 14         Rodney filed a motion for judgment on the pleading pursuant to section 2-615(e) of the Code or, in the alternative, a motion to dismiss the complaint under section 2-615(a) of the Code. In both motions, Rodney argued that he was not an "agent" as alleged in the complaint under either Doris's POA or section 2-10.3 of the Act. Rodney maintained that he had no fiduciary duty to act as alleged in the complaint, and that the complaint thereby failed to state a cause of action for breach of fiduciary duty. In its response to Rodney's motions, Ruth Ann argued that, as a designated successor agent under Doris's POA, Rodney was a fiduciary as a matter of law and therefore had a duty to Doris on the date the deeds were executed. During oral argument, Ruth Ann argued that section 2-10.3 of the Act and Illinois case law stand for the proposition that a "secondary agent could be liable" if he "sees the primary agent violate his duty to the principal," and that a successor POA has a duty to take action under such circumstances to protect the principal from harm.

¶ 15         After oral argument, the trial court took the matter under advisement. On August 29, 2014, the trial court issued a ruling from the bench finding as a matter of law that Rodney never became an agent of Doris's under Doris's POA, and therefore no fiduciary duty ever arose. The court found that, at the time of the conveyance at issue, Thomas was Doris's agent with all of the discretion that Doris chose to give him. Accordingly, the trial court granted Rodney's motion to dismiss Ruth Ann's complaint with prejudice under section 2-615(a).

¶ 16         Thomas's estate appealed the trial court's dismissal of its amended petition for citation to recover property from Rodney under section 16-1 (appeal No. 3-14-0163), and Doris's estate

7

appealed the trial court's dismissal of its complaint for damages against Rodney (appeal No. 3-14-0685).  We consolidated the appeals.

¶ 17                                                    ANALYSIS

¶ 18                     1.  The Dismissal of the Amended Estate Citation filed by Thomas's Estate

¶ 19          In appeal No. 3-14-0163, Ruth Ann, as executor of Thomas's estate, argues that the trial court erred in granting Rodney's motion to dismiss the amended estate citation under section 2-619(a)(9) because Rodney was Thomas's fiduciary at the time Thomas conveyed his farm to Rodney, thereby rendering the conveyance presumptively fraudulent.  A motion for involuntary dismissal under section 2-619(a)(9) of the Code admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint bars or defeats the cause of action.  *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31.  When ruling on a section 2-619(a)(9) motion, the court construes the pleadings "in the light most favorable to the nonmoving party" (*Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55), and should only grant the motion "if the plaintiff can prove no set of facts that would support a cause of action" (*Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8).  We review a trial court's dismissal of a complaint under section 2-619(a)(9) *de novo*.  *Reynolds*, 2013 Il App (4th) 120139, ¶ 31.

¶ 20          Ruth Ann argues that Rodney had a fiduciary relationship with Thomas at the time of the conveyance in December 2011 because Thomas had designated Rodney as a successor agent in his POA.  She also maintains that, because Doris was incompetent at the time Thomas conveyed his farm to Rodney in December 2011 (as certified by Doris's treating physician in 2014), Rodney had succeeded Doris as Thomas's attorney-in-fact at the time of the conveyance, which made him Thomas's fiduciary.  Ruth Ann argues that, because Rodney was Thomas's fiduciary,

8

Thomas's conveyance of his farm to Rodney was presumptively fraudulent, and the trial court erred in dismissing the amended estate citation.

¶ 21     A fiduciary relationship is one where a person is under a duty to act for the benefit of another. *In re Estate of Baumgarten*, 2012 IL App (1st) 112155, ¶ 16.  A fiduciary relationship can arise as a matter of law or fact. *In re Estate of DeJarnette*, 286 Ill. App. 3d 1082, 1088 (1997).  One way in which a fiduciary relationship can exist as a matter of law is through the appointment of a power of attorney. *Id.*; see also *Clark v. Clark*, 398 Ill. 592, 600 (1947); *In re Estate of Elias*, 408 Ill. App. 3d 301, 319 (2011) ("A power of attorney gives rise to a general fiduciary relationship between the grantor of the power and the grantee as a matter of law."); *Spring Valley Nursing Center, L.P. v. Allen*, 2012 IL App (3d) 110915, ¶ 12 ("When a person is designated as an agent under a power of attorney, he has a fiduciary duty to the person who made the designation.").

¶ 22     "The mere existence of a fiduciary relationship prohibits the agent from seeking or obtaining any selfish benefit for himself, and if the agent does so, the transaction is presumed to be fraudulent." *Spring Valley Nursing Center*, 2012 IL App (3d) 110915, ¶ 12; see also *Clark*, 398 Ill. at 601-02.  "Thus, any conveyance of the principal's property that either materially benefits the agent or is for the agent's own use is presumed to be fraudulent." *Spring Valley Nursing Center*, 2012 IL App (3d) 110915, ¶ 12; see also *Clark*, 398 Ill. at 601; *In re Estate of Rybolt*, 258 Ill. App. 3d 886, 889 (1994). [1]  This rule applies to conveyances of the principal's

---

[1] The presumption of fraud is not conclusive and may be rebutted by clear and convincing evidence to the contrary. *Spring Valley Nursing Center*, 2012 IL App (3d) 110915, ¶ 13.  The burden is on the agent to rebut the presumption by showing that he acted in good faith and that he did not betray the confidence placed in him. *Id.*  If the agent satisfies this burden, the

property by the agent to a third party on behalf of the principal and also to conveyances made by the principal directly to the agent. See, *e.g.*, *Clark*, 398 Ill. at 601; *Estate of Rybolt*, 258 Ill. App. 3d at 889. "[T]he burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking relief." *Lemp v. Hauptmann*, 170 Ill. App. 3d 753, 756 (1988). The trial court's determination whether a POA gives rise to a fiduciary relationship as a matter of law is a legal conclusion that we review *de novo*.

¶ 23        In determining whether Rodney was Thomas's fiduciary at the time of the conveyance at issue, we must first answer a threshold legal question. Specifically, we must decide whether a *successor* agent under a POA has a fiduciary duty to the principal *before he becomes the acting agent* (or the "attorney in-fact") merely by virtue of being named a successor agent in the POA. This is an issue of first impression. Illinois courts have held repeatedly that an appointed agent under a POA (*i.e.*, an agent designated as the principal's attorney-in-fact) has a fiduciary duty to the principal as a matter of law from the time the POA is executed, regardless of whether or when he exercises his powers under the POA. See, *e.g.*, *Estate of Elias*, 408 Ill. App. 3d at 320; see generally *In re Estate of Miller*, 334 Ill. App. 3d 692, 697, 700 (2002). However, no

transaction in question will be upheld. See 755 ILCS 45/2-7(a) (West 2010); *Clark*, 398 Ill. at 602. However, if the agent fails to rebut the presumption, the transaction will be set aside. See 755 ILCS 45/2-7(a), (f) (West 2010); *Clark*, 398 Ill. at 601. Some of the significant factors to be considered in determining if the presumption of fraud has been rebutted include whether the fiduciary made a frank disclosure to the principal of the information he had, whether the fiduciary paid adequate consideration, and whether the principal had competent and independent advice. *Spring Valley Nursing Center*, 2012 IL App (3d) 110915, ¶ 12; *Estate of DeJarnette*, 286 Ill. App. 3d at 1088.

published Illinois decision holds that a party named a *successor* agent under a POA has such a duty before he becomes the principal's attorney-in-fact. That is not surprising, because a fiduciary relation is created by the "appointment," "granting," or "designation" of a power of attorney (see, *e.g.*, *Estate of DeJarnette*, 286 Ill. App. 3d at 1088; *Estate of Elias*, 408 Ill. App. 3d at 319; *Spring Valley Nursing Center*, 2012 IL App (3d) 110915, ¶ 12), and a successor agent under a POA is appointed, granted, or designated a power of attorney only contingently, *i.e.*, only if the person designated attorney-in-fact under the instrument is unwilling or unable to act on the principal's behalf. In this case, Thomas's POA provided: "*If any agent named by me shall die, become incompetent, resign or refuse to accept the office of agent*, I name the following (each to act alone and successively, in the order named) as successor(s) to such agent: my son Rodney I. Shelton -- my daughter Ruth Ann Alford." (Emphasis added.) Thus, Rodney's designation as Thomas's agent under the POA, and the attendant powers to act on Thomas's behalf, would be triggered if, and only if, the designated attorney-in-fact (Doris) died, became incompetent, or refused to accept the agency. Until any of those events occurred, Rodney had no power of attorney under the document, and therefore no common-law fiduciary duty to exercise such power according to Thomas's interests. In sum, it is the power to act as a principal's attorney-in-fact that creates a fiduciary duty as a matter of law. Until that power is actually conferred, there can be no corresponding fiduciary duty to use that power for the principal's benefit.

¶ 24    Having found that Thomas's designation of Rodney as a successor agent under the POA did not create a common-law fiduciary relationship, we proceed to the second question noted above: namely, whether the estate established that Doris was incompetent at the time of the conveyance in 2011 (and, therefore, that Rodney became Thomas's agent-in-fact at that time

11

under the POA) through Dr. Jurak's physician's report, even though that report was prepared and signed approximately two years later. The trial court answered this question in the negative. The court concluded that a physician's certification of incompetency had to be rendered prior to the conveyance at issue in order to establish Doris's incompetency under Thomas's POA, and that a physician's certification prepared two years after the fact could not establish Doris's incompetency "retroactively." We agree.

¶ 25    As noted, Thomas's POA names Rodney as a successor agent only if the designated attorney-in-fact (Doris) "shall *** become incompetent." The next sentence states that "[f]or purposes of this paragraph ***, a person shall be considered to be incompetent if and while the person is a minor or an adjudicated incompetent or disabled person or the person is unable to give prompt and intelligent consideration to business matters, *as certified by a licensed physician*." (Emphasis added.) Although the POA does not expressly state when the physician's certification must take place, when the paragraph is read as a whole, the clear implication is that the certification must occur before the successor power of attorney becomes the attorney-in-fact. Unless the originally designated attorney-in-fact is disabled or a minor, she does not "become incompetent" for purposes of the POA unless she is *adjudicated* incompetent or *certified* incompetent by a licensed physician. Moreover, the POA expressly states that the original agent will be considered incompetent "if *and while*" such certification and adjudication takes pace. (Emphasis added.) The most straightforward reading of these provisions is that the physician's certification, like an adjudication of incompetency, is meant to serve as a triggering event that nullifies the primary agent's authority at the time of the certification and in the future, until the certification is rescinded. Nothing in Thomas's POA suggests that a physician's certification prepared years after the fact may retroactively nullify the designated agent-in-fact's authority to

12

act under the POA. Because written POAs must be strictly construed in Illinois (*In re Estate of Romanowski*, 329 Ill. App. 3d 769 (2002); *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 326 Ill. App. 3d 126 (2001)), we will not read such intent into the instrument by implication where the text does not clearly support that interpretation.

¶ 26     Moreover, there are good policy reasons for reading a standard form POA in this manner. Allowing incompetency determinations to be made years after the fact could create uncertainty and lead to situations where an acting power of attorney makes financial decisions for a long period of time before he or she is declared incompetent and replaced with a successor POA. Principals, acting agents, successor agents, and third parties need to know with certainty who has the authority to act on the principal's behalf (and who has fiduciary duties to the principal) at a particular time. If an attorney-in-fact's authority can be nullified retroactively by a doctor's certification years after the fact, the designated successor agents would never be certain when their powers and duties under the POA were triggered. A successor agent under the POA might reasonably believe that the attorney-in-fact is competent, only to discover years later that she had been incompetent for years, and that the successor agent has been inadvertently shirking his duty throughout that entire period. This would create a regime of instability and uncertainty which could upset the settled expectations of principals, attorneys-in-fact, successor agents, and third parties who have transacted business with an attorney-in-fact. Moreover, allowing retroactive certification of an agent's incompetency would likely spawn litigation (complete with conflicting expert testimony) to establish when an attorney-in-fact became incompetent. A bright-line rule

13

requiring a physician's certification of incompetency *before* the attorney-in-fact is replaced by a successor agent would avoid all of these problems.[2]

¶ 27    Accordingly, we affirm the trial court's dismissal of the amended estate citation in appeal No. 3-14-0163.

¶ 28                    2. The Dismissal of Doris's Estate's Claim Against Rodney

¶ 29    In Case No. 3-14-0685, Ruth Ann, as executor of Doris's estate, argues that the trial court erred in dismissing Doris's estate's claim against Rodney for breach of fiduciary duty as a successor trustee under section 2-10.3(b) of the Act (755 ILCS 45/2-10.3(b) (West 2010)). The trial court dismissed Doris's estate's claim under section 2-615(a) of the Code. A section 2-615(a) motion to dismiss tests the legal sufficiency of the complaint on its face. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 15. A section 2-615(a) motion argues that the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are insufficient to state a cause of action upon which relief may be

---

[2] In his dissent in appeal No. 3-14-0163, Justice Schmidt suggests that most of these problems could be alleviated if we allowed retroactive certifications of incompetency by physicians but limited the effect of such certifications to transactions that benefit the successor agent. See *infra* ¶ 50. That may well be true. However, the language of Thomas's POA does not support retroactive certifications of incompetency, much less the limitation of such certifications to transactions that benefit a successor agent. As noted above, written POAs must be strictly construed in Illinois. *In re Estate of Romanowski*, 329 Ill. App. 3d 769 (2002); *Amcore Bank*, 326 Ill. App. 3d 126. Accordingly, we cannot read provisions or limitations into a POA that are not clearly supported by its text.

granted. *Id.*, ¶ 25. "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." (Internal quotation marks omitted.) *Id.* We review a trial court's dismissal of a complaint under section 2-615(a) *de novo*. *Id.*

¶ 30 The complaint in this case alleged that, on December 1, 2011, Thomas violated his fiduciary duty as Doris's agent under Doris's POA by transferring all of Doris's interest in the farm to Rodney and Rodney's wife without reserving a life estate in Doris at a time when Doris was incompetent and in need of income from the property. The complaint alleged that Rodney "participated in such breach of fiduciary duty" by Thomas in violation of section 2-10.3 of the Act (755 ILCS 45/2-10.3 (West 2010)) by failing to notify Doris of such breach and by failing to take action to safeguard Doris's best interests.

¶ 31 Section 2-10.3 of the Act is entitled "Successor Agents." Subsection (b) of section 2-10.3 provides that:

> "An agent is not liable for the actions of another agent, including a predecessor agent, *unless the agent participates in or conceals a breach of fiduciary duty committed by the other agent. An agent who has knowledge of a breach or imminent breach of fiduciary duty by another agent must notify the principal and, if the principal is incapacitated, take whatever actions may be reasonably appropriate in the circumstances to safeguard the principal's best interest."* (Emphasis added.) 755 ILCS 45/2-10.3(b) (West 2010)).

Ruth Ann argues that, under section 2-10.3(b), Rodney is liable for any breach of fiduciary duty committed by Thomas when he conveyed Doris's interest in the farm to Rodney.

15

¶ 32　　　In dismissing the complaint, the trial court held that, because Rodney was only a successor agent who never became an actual agent of Doris's under the POA, no fiduciary duty ever arose as a matter of law. However, although we agree that Rodney did not have a fiduciary duty to Doris under the POA or under the common law, that does not resolve the matter. The complaint in this case was based upon section 2-10.3(b) of the Act. That section provides that successor agents may be liable for breaches of fiduciary duty committed by their predecessor agents if they participate in or conceal such breaches. 755 ILCS 45/2-10.3(b) (West 2010). Successor agents are liable for such conduct under section 2-10.3(b) regardless of whether they have independent fiduciary obligations to the principal. Section 2-10.3(b) does not state that successor agents may be liable for breaches committed by predecessor agents only if they themselves become acting agents.

¶ 33　　　Moreover, section 2-10.3(b) imposes certain affirmative obligations upon successor agents. Specifically, section 2-10.3(b) provides that a successor agent "who has knowledge of a breach or imminent breach of fiduciary duty by another agent" "must notify the principal and, if the principal is incapacitated, take whatever actions may be reasonably appropriate in the circumstances to safeguard the principal's best interest." *Id.* The statute suggests that successor agents who fail to discharge these obligations are liable for any breach of fiduciary duty committed against a principal by a predecessor agent.[3]

_____

[3] It should be emphasized, however, that the statute only imposes affirmative duties on a successor agent in the event that the successor agent "has knowledge of a breach or imminent breach of fiduciary duty by another agent." *Id.* In that event, and only in that event, the successor agent must notify the principal and, if the principal is incapacitated, take reasonable steps safeguard the principal's best interest. *Id.*

¶ 34    Thus, by its plain terms, section 2-10.3(b) could support a cause of action against a successor agent if the successor agent participated in or concealed a breach of duty by a predecessor agent, or if the successor agent was aware of an imminent breach of fiduciary duty by a predecessor agent but failed to notify the principal or take reasonable steps to safeguard an incompetent principal's interest.  In this case, the complaint alleged that: (1) Thomas violated his fiduciary duty as Doris's agent under Doris's POA by transferring all of Doris's interest in the farm to Rodney and Rodney's wife without reserving a life estate in Doris at a time when Doris was incompetent and in need of income from the property; (2) Rodney was aware that Thomas was going to execute a deed accomplishing this wrongful transfer of Doris's property interest; and (3) Rodney "participated in such breach of fiduciary duty" by Thomas in violation of section 2-10.3(b) by failing to notify Doris of such breach and by failing to take action to safeguard Doris's best interests.  Thus, the complaint alleged facts sufficient to state a cause of action.  We therefore hold that the trial court erred in dismissing the complaint under section 2-615(a).

¶ 35    Rodney argues that, when the Act is read as a whole, it is clear that section 2-10.3(b) does not apply to successor agents. Section 2-10.3(b) states that "[a]n *agent*" may be liable for the actions of another agent under certain specified circumstances; it does not state that a "successor agent" may be liable for such actions.  Similarly, section 2-10.3(b) imposes certain duties on an "agent," not a "successor agent."  The Act defines "agent" as "the attorney-in-fact or other person designated to act for the principal in the agency." 755 ILCS 45/2-3 (West 2010).[4]  By contrast, section 2-10.3 suggests that a "successor agent" is designated to act only "if an initial or predecessor agent resigns, dies, becomes incapacitated, is not qualified to serve, or declines to serve." 755 ILCS 45/2-10.3(a) (West 2010).  Thus, Rodney contends that, by using the term

_____

[4] The "agency" is the written power of attorney.  See 755 ILCS 45/2-3 (West 2010).

"agent" instead of "successor agent" throughout section 2-10.3(b), the legislature expressed its intent that the duties and potential liability prescribed by that section should apply only to attorneys-in fact, not to successor agents.

¶ 36    We disagree. Section 2-10.3(b) is a subsection within section 2-10.3, which is entitled "Successor agents." The other two subsections within that section both clearly apply to successor agents. See 755 ILCS 45/2-10.3(a), (c) (West 2010). Thus, it stands to reason that section 2-10.3(b) applies to successor agents as well.

¶ 37    Moreover, section 2-10.3(b) imposes certain duties on an agent "who has knowledge of a breach *or imminent breach of fiduciary duty* by another agent." (Emphasis added.) 755 ILCS 45/2-10.3(b) (West 2010). As Rodney acknowledges, only attorneys-in-fact have fiduciary obligations to the principal under a POA, and only attorneys-in-fact are authorized to act for the principal. Accordingly, only an attorney-in-fact could commit an "immanent breach of fiduciary duty." This means that section 2-10.3(b) must intend to impose duties on an agent when certain unlawful acts are performed or about to be performed by an acting attorney-in-fact under a POA. As noted, however, Rodney argues that section 2-10.3(b) imposes duties only on an attorney-in-fact. If that were true, then the statute could apply only in a situation where there are co-agents (*i.e.*, two simultaneously acting attorneys-in-fact) under the POA. However, a careful reading of the Act as a whole establishes that section 2-10.3(b) was not intended to apply to co-agents. First, as noted, section 2-10.3(b) appears in a section of the Act entitled "Successor agents," not "co-agents." More importantly, there is a separate section of the Act entitled "Co-agents" (755 ILCS 45/2-10.5 (West 2010)), and that section contains a subsection that is identical to section 2-10.3(b) (see 755 ILCS 45/2-10.5(c) (West 2010)). If section 2-10.3(b) applied to co-agents, as Rodney maintains, then section 2-10.5(c) would be rendered superfluous. "It is a general rule of

18

construction that where a statute can be reasonably interpreted so as to give effect to all its provisions, a court will not adopt a strained reading which renders one part superfluous." *Bass v. Cook County Hospital*, 2015 IL App (1st) 142665, ¶ 25. For this additional reason, we reject Rodney's interpretation.

¶ 38 In his partial dissent in case No. 3-14-0685, Justice Carter maintains that our decisions in these two consolidated appeals are inconsistent. See *infra*, ¶ 47. We disagree. In the first appeal (No. 3-14-0163), we hold that a successor agent under a POA has no fiduciary duty to the principal under the common law until he becomes the acting agent (or attorney-in-fact). In the second appeal (No. 3-14-0685), Justice Schmidt and I hold that a successor agent has a limited statutory duty under section 2-10.3(b). That statutory duty is an exception to (*i.e.,* in derogation of) the common law rule that successor agents have no duties to the principal. However, it is a very limited duty. As noted above, the statute imposes a duty on a successor agent to: (1) refrain from participating in or concealing a breach of fiduciary duty committed by another agent; (2) notify the principal of any immanent breach of fiduciary duty by another agent and, if the principal is incapacitated, take whatever actions may be reasonably appropriate under the circumstances to safeguard the principal's best interest. The latter duty is imposed only if the successor agent has knowledge of a breach or imminent breach of fiduciary duty by another agent. Thus, it will apply only in very limited circumstances.

¶ 39 We also disagree with Justice Carter's conclusion that "the references to the 'agent' in section 2-10.3(b) are limited solely to the acting agent or attorney in-in-fact." *Infra* ¶ 47. As explained above, when section 2-10.3(b) is read in conjunction with other relevant provisions of the Act, the only reasonable conclusion is that section 2-10.3(b) was intended to apply to successor agents, not to co-agents or other attorneys-in-fact.

19

¶ 40    Moreover, contrary to Justice Carter's conclusion (*infra* ¶ 47), our reading of section 2-10.3(b) does not conflict with section 2-7, which provides that an agent has no duty to "assume control of or responsibility for any of the principal's property, care or affairs, regardless of the principal's physical or mental condition." 755 ILCS 45/2-7 (West 2010). Section 2-10.3(b) merely imposes a limited duty under certain narrow and specified circumstances, as discussed above. In any event, even if there were some tension between these two provisions, the specific duties imposed in section 2-10.3(b) would control over the general principle announced in section 2-7. See *Sierra Club v. Kenney*, 88 Ill. 2d 110, 126 (1981); *Calibraro v. Board of Trustees of the Buffalo Grove Firefighters' Pension Fund*, 367 Ill. App. 3d 259, 262 (2006).

¶ 41    For the reasons set forth above, we reverse the trial court's dismissal of Doris's estate's claim.

¶ 42                                   CONCLUSION

¶ 43    The judgment of the circuit court of Grundy County in appeal No. 3-14-0163 is affirmed. The judgment of the circuit court of Grundy County in appeal No. 3-14-0685 is reversed and remanded for further proceedings.

¶ 44    No. 3-14-0163, Affirmed.
        No. 3-14-0685, Reversed and remanded.

¶ 45    JUSTICE CARTER, concurring in part and dissenting in part.

¶ 46    I concur with the majority's decision affirming the trial court's dismissal of the amended estate citation in appeal No. 3-14-0163. Specifically, I agree with the analysis in paragraphs 18 through 27.

¶ 47    However, for the reasons that follow, I also respectfully dissent from the majority's decision reversing the trial court's dismissal of the estate's claim in appeal No. 3-14-0685.

Specifically, I dissent from paragraphs 28 through 41. First, in my opinion, the majority's decisions in the two consolidated appeals are inconsistent with one another as the majority finds in the first appeal (No. 3-14-0163) that a successor agent under a POA has no fiduciary duty to the principal until he becomes the acting agent but reaches the exact opposite conclusion in the second appeal (No. 3-14-0685). Second, I believe that the majority's analysis in the latter appeal is based upon a strained reading of section 2-10.3(b) of the Act, a reading with which I do not agree. In my opinion, the references to the "agent" in section 2-10.3(b) are limited solely to the acting agent or attorney-in-fact and do not include, or apply to, a successor agent. See 755 ILCS 45/2-3(b) (West 2010) (" '[a]gent' means the attorney-in-fact or other person designated to act for the principal in the agency"). The more-limited reading of section 2-10.3(b) that I have suggested here is more in keeping with section 2-7 of the Act, which limits the duties, obligations, and liabilities of an agent acting under a POA and provides, in part, that an agent has no duty to "assume control of or responsibility for any of the principal's property, care or affairs, regardless of the principal's physical or mental condition." 755 ILCS 45/2-7 (West 2010). For the reasons stated, unlike the majority, I would affirm the trial court's dismissal of Doris's estate's claim in appeal No. 3-14-0685.

¶ 48        JUSTICE SCHMIDT, concurring in part and dissenting in part.

¶ 49        Because I would reverse the trial court's dismissal of the amended estate citation in appeal No. 3-14-0163, I respectively dissent from that portion of the majority opinion which affirms it. *Supra* ¶¶ 18-27.

¶ 50        In paragraph 26, *supra*, the majority explains that the sky will fall if we were to read a standard form POA to allow a retroactive declaration of incompetency. I suggest that the majority's view allows a successor agent under a POA, who knows full well that the designated

21

attorney-in-fact is incompetent, to engage in self-dealing before either seeking a physician's declaration of incompetency, or a court order to the same effect. In a case such as this, we have the opinion and medical records of Doris's former treating physician, not simply a hired expert. If the estate can show that Doris was indeed incompetent at the relevant times, I see no reason, not to allow the estate to challenge the transactions that benefitted Rodney. If a retroactive declaration of incompetency only affects transactions that benefit the successor agent directly, or even indirectly, then that should alleviate most of the majority's concerns. *Supra ¶ 26.*

¶ 51 I concur with Justice Holdridge's analysis and reversal of the trial court with respect to appeal No. 3-14-0685. *Supra ¶¶ 29-41.*