**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220305-U

Order filed July 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| DENISE KITCHEN and MICHELLE ATCHISON, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0305 Circuit No. 19-CH-68 |
| | ) ) | Honorable |
| LINDA VOLKMAN, | ) ) | Joseph P. Hettel, Judge, Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice Holdridge and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court did not err in its rulings regarding petitioners' breach of
fiduciary duty claims or in refusing to award attorney fees or punitive damages;
petitioners were not prejudiced by the court's actions and waived any argument
regarding any wrongful interference with inheritance claim.

¶ 2    Petitioners, Denise Kitchen and Michelle Atchison, appeal the circuit court's rulings after

a bench trial, arguing that the court's actions were prejudicial, and that it made several errors

deciding petitioners' breach of fiduciary duty and wrongful interference with inheritance claims. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On January 28, 2019, Kitchen filed a petition for power of attorney agent termination and accounting. Kitchen alleged that she and respondent, Linda Volkman, were both daughters of Joyce VeZain, who was an interested person under the Power of Attorney Act. 755 ILCS 45/1-1 *et seq.* (West 2018). Respondent acted as VeZain's power of attorney agent for both health care and property. The petition alleged that during the time respondent acted as VeZain's agent, she restricted Kitchen's access to information regarding VeZain's medical condition, refused to provide Kitchen with a copy of the property power of attorney, and otherwise acted in bad faith. The petition was later amended to include claims of breach of fiduciary duty, conversion, wrongful interference with inheritance, and statutory financial exploitation, all alleging that respondent enriched herself and her children while acting as agent over VeZain's property, resulting in a diminution of her estate.

¶ 5        Kitchen also alleged that respondent violated the Power of Attorney Act by: (1) establishing an account solely in her name funded by VeZain; (2) not timely paying VeZain's bills when sufficient funds were available; (3) allowing checks to bounce; and (4) loaning money to herself, her children, and brother-in-law. *Id.* Kitchen argued that the loans to family members were presumed fraudulent and requested respondent rebut that presumption. She also requested an accounting on all VeZain's accounts. Shortly after proceedings commenced, Atchison, another sibling, joined Kitchen in the petition.

¶ 6         In response to the petition, respondent filed a motion to dismiss and various other motions to strike certain aspects of the petition. She also engaged a CPA firm to prepare an accounting in her defense.

¶ 7         After receiving the accounting and supplemental updates, petitioners alleged there were multiple discrepancies regarding the loan amounts given to respondent's children. Additionally, the "seed books" used to document loans from VeZain listed checks that borrowers testified they did not receive or were in a different amount. Loan ledgers from the bank also showed different numbers than those in the seed books. At trial, respondent testified that she kept records of her transactions as agent to the best of her ability. She testified that she wrote the checks documented in the seed books, balanced her mother's bank statements, and was in contact with VeZain's financial advisor. She acknowledged that one loan recorded in the seed book was recorded as being $10,000 less than the actual loan given and stated she must have made a mistake in recording it.

¶ 8         Petitioners also questioned the cash kept in VeZain's home safe and how that money was spent. Respondent testified that at least $10,000 was kept in VeZain's home safe. She created a cash-on-hand ledger for the accounting but admitted that it was largely from memory because she did not take receipts or make notes on how the cash was used. The ledger showed negative $12,000 balance, and at one point the balance was listed as being in a $21,000 deficit.

¶ 9         Petitioners also alleged that the accounting indicated there were several undocumented retirement and social security checks. Respondent testified that she cashed some of those checks to be able to continue making loans with the cash on hand.

¶ 10         When asked about VeZain's bank accounts, respondent testified that she did not comingle her funds with her mother's. When petitioners' attorney pointed out that she was listed

as a joint owner to a bank account, she stated that she did not realize what that meant and that she knew the bank was aware she was VeZain's agent and could access the accounts. The only time she moved money from her mother's account to one of her own would be to pay her mother's bills.

¶ 11    Kitchen testified at trial that she did not object to the loans given to respondent's children. She stated she took issue with respondent's unsatisfactory recordkeeping. She also testified that she spent approximately 600 hours looking through all the records provided in discovery trying to find discrepancies. When asked how much money was unaccounted for based on her review, she offered amounts that respondent's attorney later argued went to a jeweler to pay for VeZain's watch repair.

¶ 12    Testimony at trial also revealed that whenever a borrower requested a loan from VeZain, respondent would be present. VeZain would ask respondent if she had enough money to cover the loan. Once respondent confirmed she had the money, VeZain would approve the loan and ask respondent to execute it.

¶ 13    At the end of trial, the court stated that it found respondent to be somewhat credible in that while she may not have performed well as her mother's fiduciary, it did not believe she acted in bad faith. The court further told respondent:

> "If [VeZain] wants to let it fly out the window with penalties and having things shut off, it's her money and if she's capable or competent, she can do it. She can take the dollar bills and set them on fire if she wanted to, but as a fiduciary you do have a higher responsibility, and is a negligent finding or a finding of negligence in that responsibility or recklessness even enough to justify fees? Those in my mind are the issues.

4

I don't think that you stole any money. I don't think there's evidence sufficient to say that you stole money, and I know that means a lot to the two of you obviously, but just because there's not evidence to show that you stole money, is there evidence that you took actions to hide the use of money just so you couldn't stop the other side or the other side couldn't stop you from getting the money to your children, and that bit of a cat and mouse game, the fact that it can be argued that it caused all of this should you be responsible for the cost of it and then if the answer to that is yes, what is the cost of it ultimately."

¶ 14 The court then ordered a briefing schedule for final arguments and set the matter for closing arguments, which occurred on June 1, 2022. Before allowing the parties to argue, the court informed them that it had been unable to review their written arguments the day before but believed it was prepared to hear arguments. It stated that each parties' argument would be timed. After petitioners' attorney informed the court that he had prepared for longer than what the court allotted to him, the court allowed him to finish his argument in the time originally planned. After arguments, the court again stated that it did not believe respondent stole money from her mother or that her actions were motivated by an "intent to take advantage of her mother or her siblings and their finances." The court determined that respondent's testimony that she did not steal anything from her mother and was only trying to carry out her mother's wishes was enough to rebut any presumption of fraud against her actions. It stated that even with this finding, it did not believe petitioners made a mistake in filing their claim against respondent. When addressing petitioners' request for attorney fees, the court stated:

"Is it statutorily supported, that's what I'm going to have to determine here, and the papers I think will suggest that it is statutorily supported so at a

5

minimum there's going to be attorney fees ordered, probably at a maximum frankly. I don't know how I can determine – I know the argument, *** is why shouldn't she be punished and how is it going to prevent from other people from not. All right, judge. You believe she didn't steal. What's going to prevent the thief from stealing when the courts won't make you accountable and if you're not accountable make you pay? I don't know.

I don't know if a general deterrence is going to be – it's certainly not going to be part of my ruling in this case, and the criminal suggestions that you have made are not going to be my finding, but negligent accounting, one thing. Intentionally misleading accounting another, and that's what I saw here justified by that's what mom wanted, and that's what I'm going to do. I'm going to follow my duty of loyalty to my mother and to do what she wanted, not the same duty of loyalty that's necessarily talked about here.

So now we have another step in this case, and that next step is going to be what are reasonable attorney fees and what is appropriate?

***

I want to look with more scrutiny at my notes and your papers as I talked about before, but it is my inclination right now that there's going to be attorney fees awarded.

There's not going to be a finding that there has been money taken."

¶ 15    The court requested the attorneys submit their records for attorney fees and set the matter for hearing on those fees. At the hearing on June 28, 2022, the court asked petitioners what gave it the authority to award attorney fees. Petitioners argued that section 2-7 of the Power of

6

Attorney Act allowed for attorney fees to be awarded against respondent. 755 ILCS 45/2-7 (West 2018). Respondent argued that the court could only award attorney fees if there were damages to the estate.

¶ 16    The court then made the following findings:

"The first thing, this lawsuit being brought by [petitioners], it had merit. There is no question that what was discovered upon the discovery process and after bringing this action was that the agent in this case was not doing her job in compliance with the statute. I want that finding to be on the record.

On the flip side of that, after having heard the evidence – and I'm paraphrasing, and I'll defer to what I said after the trial – I found that her report as to what happened with her mother's estate, property of her mother's estate was accounted for and that she did not take any of the money for her own gain or for the gain of her children.

Specifically, while her actions were not authorized by the act, she carried out a plan that was demonstrated. Specifically, her mother, throughout her life, had loaned money to her, to her sister and continued that on to younger family members or children and grandchildren regarding college and weddings, and she continued to do that. How she did that was inappropriate and how she responded to the requests that were made to account was also inappropriate.

* * *

It seems wrong to me that I cannot find justification to grant an award of attorney's fees without a showing of damage, without a showing of loss to the estate."

7

¶ 17 Thus, the court found that there was merit to petitioners' cause of action and found that respondent violated the Power of Attorney Act in that she failed to keep proper records. However, because there was no diminution in the estate, the court determined that the respondent did not owe any funds to the estate as a result of her actions. It further found that respondent owed the estate $11,825 for funds taken to pay her own attorney fees and that no fees were owed for petitioners' attorney fees. The petitioners appealed.

¶ 18                                                     II. ANALYSIS

¶ 19 On appeal, petitioners make various arguments that the court erred in its findings. Specifically, petitioners contend this court should reverse the circuit court's ruling that petitioners did not prove a breach of fiduciary duty. In doing so, petitioners argue that the court improperly applied the presumption of fraud, was incorrect in finding no diminution of the estate, and erred in refusing to award attorney fees or punitive damages. Petitioners also argue that they sufficiently proved their claim of wrongful interference with inheritance and that generally the court's actions were prejudicial.

¶ 20                                             A. Prejudice by the Court

¶ 21 Petitioners begin their argument by asserting that they were prejudiced by the appointment of the trial judge to our court. They argue the appointment "fast-tracked" the case, causing it to receive less time and attention than it should have. Petitioners point to closing arguments as an example. They argue that the court allotted two hours for the argument then shortened that time on the day of the hearing, informed the parties that it had not read the written arguments prior to arguments, and in the petitioners' opinion, had "made [its] mind up on material issues prior to hearing." They contend that these actions caused them to be prejudiced by the court.

8

¶ 22     This court fails to see how a six-day trial, briefing schedule for closing arguments, and separate hearing dates for closing arguments and attorney fees were inadequate to sufficiently resolve the matter. Further, while arguing they did not receive adequate consideration for their closing argument and accompanying briefs, petitioners omit several important facts. First, when asserting that the court shortened their allotted time for argument, petitioners failed to mention that when counsel told the court that he had planned and prepared for thirty minutes to argue, the court allowed counsel thirty minutes for his argument. Further, no statements were made to the court that either party was unable to fully argue or present evidence in the proceedings. There is nothing in the record that indicates any part of the trial or argument was cut short or that material evidence could not have been presented due to any time restraints. The circuit court made every effort to accommodate the parties and to allow each to make any arguments they wished to make.

¶ 23     Petitioners also argue that the court had already made up its mind prior to final oral argument; however, the record demonstrates that the court went off the record several times in order to review the law and engaged in a thorough discussion of its findings with the parties. Finally, petitioners argue that they were prejudiced because the court had an "incorrect orientation" of the case. However, they do not explain this argument or provide any precedent to indicate such an accusation. Rather, petitioners make assumptions regarding the court's thought process and ask this court to make the same assumptions without any evidence to corroborate them. We choose not to do this, and instead turn to the substantive issues raised in the appeal.

¶ 24                                 B. Breach of Fiduciary Duty

¶ 25      Petitioners' first substantive argument is that they proved all elements of their breach of fiduciary duty claims, and the circuit court erred in not finding in their favor. Within this

argument, petitioners also allege that the circuit court failed to properly apply the presumption of fraud and erred in finding that there was no diminution of the estate. They request this court reverse these findings, as well as the circuit court's decisions denying an award of attorney fees and punitive damages.

¶ 26    To prove a breach of fiduciary duty, petitioners were required to establish a fiduciary relationship existed, respondent breached her duties as fiduciary, and damages resulted from that breach. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69. The question of whether respondent breached her fiduciary duty is a question of fact. *Thompson v. Gordon*, 241 Ill. 2d 428, 438-39 (2011). We will not disturb the circuit court's ruling on a question of fact unless it is against the manifest weight of the evidence. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160 (1993). A ruling is against the manifest weight of the evidence only if an opposite conclusion is clearly evident. *Id.*

¶ 27    While the parties disagree on when respondent became a fiduciary, there is no doubt that a fiduciary relationship existed, and that respondent owed a duty to her mother while she acted as her agent. For the purposes of this appeal, petitioners have established this element of their claim.

¶ 28    The next element petitioners must prove is that respondent breached her fiduciary duty to her mother. Petitioners argue several different breaches occurred. First, they argue that respondent did not make complete and accurate records. The court found in petitioners favor on this issue. It found that respondent violated the Power of Attorney Act by failing to maintain complete financial records and for failure to provide petitioners with an accounting when they initially requested it. 755 ILCS 45/2-7(c) (West 2018).

¶ 29    Petitioners also argue that they proved breaches related to the loans respondent gave to her children, unaccounted for cash amounts and retirement checks, and commingling of funds in the form of joint accounts. A presumption of fraud arises regarding these alleged breaches, which petitioners argue was not properly applied by the circuit court.

¶ 30    The Power of Attorney Act recognizes that it is the agent's exercise of power pursuant to the authorizing document which triggers the agent's duty to the principal. See 755 ILCS 45/2-7(a) ("Whenever a power is exercised, the agent shall act in good faith for the benefit of the principal using due care, competence, and diligence in accordance with the terms of the agency"). When a person is designated as an agent through a power of attorney, she has a fiduciary duty to the person giving the designation. *Id.* The existence of this relationship prohibits the agent from seeking or obtaining any selfish benefits. *Clark v. Clark*, 398 Ill. 592, 601-02 (1947). If the agent does create such a benefit, the transaction is presumed to be fraudulent. *Id.* This presumption may be rebutted by clear and convincing evidence to the contrary, either by the agent showing that she acted in good faith or that she did not betray the confidence placed in her. *Id.* at 601 ("If a conveyance was not procured through improper means attended with circumstances of oppression or overreaching but was entered into by the grantor with full knowledge of its nature and effect and because of his or her deliberate, voluntary and intelligent desire, the existence of a fiduciary relation does not invalidate the transaction."). Here, it is the respondent's burden to rebut the presumption, and if she fails to do so, the transaction at issue must be set aside. 755 ILCS 45/2-7(a), (f); *Clark*, 398 Ill. at 601. The circuit court's determination that the presumption of fraud has been overcome is entitled to deference and will not be reversed on appeal unless the decision is against the manifest weight of the evidence. *Clark*, 398 at 601.

11

¶ 31    Petitioners argue that the presumption of fraud is triggered because respondent benefited from the loans given to her children and her access to VeZain's cash on hand and retirement checks. Because the transactions in question are presumed fraudulent, respondent must demonstrate either the language of the power of attorney itself authorized the act or by some other evidence, VeZain intended, without undue influence, to authorize respondent to so act. The court found that respondent successfully rebutted the presumption of fraud with a showing that she used the same method of giving loans to family members as her mother had done for years prior, as well as the testimony of her children regarding how loans were given to them while respondent acted as agent, successfully rebutted any presumption against her. The court also found that respondent was not intending to benefit from any of her actions and that she was merely following the course of conduct her mother took when she was capable of making financial decisions on her own. We also note that Kitchen testified that she took no issue with the loans, as her mother had made it a practice of loaning family money; it was merely the recordkeeping that Kitchen saw as insufficient. Having reviewed the evidence in this case, we find that the circuit court's determination that respondent met her burden to rebut the presumption of fraud was not against the manifest weight of the evidence.

¶ 32    Finally, petitioners were required to prove damages as it related to the breaches that they successfully proved. Petitioners must prove damages to a reasonable degree of certainty. *In re Estate of Halas*, 209 Ill. App. 3d 333, 349 (1991). They may not rely on evidence that is speculative or uncertain. *Id.* While the circuit court here acknowledged that respondent's actions were insufficient as an agent and did indeed find that she violated the Power of Attorney Act, it found that no damages would be awarded because there was no proof that there was a diminution of value in the estate.

12

¶ 33    Petitioners argue that they sufficiently proved damages in this case; however, when asked to quantify damages, petitioners have been unable to do so. Petitioners argue that "[respondent] was required to prove, by clear and convincing evidence, that any transfers to herself and her family, or unexplained funds that were not accounted for, did not result in damage to VeZain." Petitioners repeatedly argue that the burden was on respondent to overcome the presumption of fraud and that this burden is somehow connected to proving damages. While petitioners are correct that the respondent must overcome the presumption of fraud, this does not create a burden on her to prove or disprove damages. Petitioners misunderstand the presumption of fraud and what burden respondent has in overcoming that presumption.

¶ 34    The burden on respondent to rebut any presumption of fraud is to show that the transaction was not fraudulent, not that there was no damage to the estate. See *Clark*, 398 Ill. at 601. " '[T]he presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of going forward and introducing evidence to meet the presumption. If evidence is introduced which is contrary to the presumption, the presumption will cease to operate.' " *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 462 (1983) (quoting *McElroy v. Force*, 38 Ill. 2d 528, 533 (1967)). Here, the court found that respondent introduced evidence to successfully rebut the presumption of fraud. Thus, the presumption was no longer a factor, and petitioners were required to prove the rest of their claims.

¶ 35    Petitioners failed to provide any evidence of damages and blame respondent for not presenting the CPA who performed the accounting at trial to testify that there was no damage to the estate. Petitioners have no explanation for why they did not present an accountant to testify on their behalf or why they did not subpoena respondent's CPA themselves. Instead, petitioners

13

provide "suggestions" and "estimated" amounts that they believed respondent should pay toward the estate. This is not proof of damages. Petitioners have been unable to give this court any real answer as to what damages the estate incurred. Instead, they have provided more estimates, suggestions, and ranges without any proof to support those numbers. Notably, the amount of "suggested" damages has changed from trial, closing arguments, appellate briefs, and oral arguments. Petitioners have been unable to pinpoint any actual damages to the estate. We simply cannot assess damages in the vacuum of petitioner's making.

¶ 36    Absent any clear assessment of damages, we conclude that it is not against the manifest weight of the evidence for the circuit court to have found there was no actual loss to the estate. Further, because petitioners failed to prove damages, they also failed to prove their claims of breach of fiduciary duty.

¶ 37    Also related to their breach of fiduciary duty claims, petitioners argue that the court erred in not awarding them attorney fees or punitive damages. The general rule regarding attorney fees is that all parties are responsible for their own. *Myers v. Popp Enterprises, Inc.*, 216 Ill. App. 3d 830, 838 (1991). A court may award attorney fees against a party if it is authorized to do so, either by statute or agreement of the parties. *In re Marriage of Magnuson*, 156 Ill. App. 3d 691, 700 (1987). The relevant statute, 755 ILCS 45/2-7(f), reads as follows:

> "An agent that violates this Act is liable to the principal or the principal's successors in interest for the amount required (i) to restore the value of the principal's property to what it would have been had the violation not occurred, and (ii) to reimburse the principal or the principal's successors in interest for the attorney's fees and costs paid on the agent's behalf. This subsection does not limit

14

any other applicable legal or equitable remedies." 755 ILCS 45/2-7(f) (West 2018).

¶ 38     The legislative intent behind this statute is to award attorney fees whenever a violation of the Act is proven in order to make the principal's estate whole. *Collins v. Noltensmeier*, 2018 IL App (4th) 170443, ¶ 39. The court's decision in awarding attorney fees will not be reversed absent an abuse of discretion. *Blakenship v. Dialist International Corp.*, 209 Ill. App. 3d 920, 927 (1991).

¶ 39     A plain reading of the statute indicates that if a violation of the Act is found, respondent is liable to both make the estate whole by paying back any loss she caused and to pay back any attorney fees *paid on the agent's behalf*. 755 ILCS 45/2-7(f) (West 2018). This last phrase leads to the conclusion that one can only recover attorney fees under this statute if the fees were to pay for the agent's defense, not for the fees incurred by the principal's other children. This interpretation aligns with the stated purpose of awarding such fees to make the estate whole again. See *Collins*, 2018 IL App (4th) 170443, ¶ 39.

¶ 40     The court here found that, although respondent violated the Act by not keeping proper records, it could not award attorney fees because there was no diminution of the estate. While the court's interpretation of the statute appears incorrect, the end result is still the same. Under the statute, petitioners are not entitled to attorney fees because those fees were not paid for by the estate on respondent's behalf, and the court did not err in refusing to award such fees. We do note, however, that it correctly ordered respondent to reimburse the estate for the portion of attorney fees that was paid out of it for her representation in the matter.

¶ 41                          C. Wrongful Interference with Inheritance

¶ 42    Lastly, petitioners also argue that the court did not consider their claim that respondent violated the Criminal Code under the statute for wrongful interference with inheritance. 720 ILCS 5/17-56 (West 2018). They argue that under section 17-56 of the Code, treble damages should have been awarded. *Id.*

¶ 43    Petitioners' argument in their brief consists of two paragraphs and a cursory statement that they are entitled to relief under the statute. However, their brief is completely void of any argument, reference to the record, or caselaw or other authority to support their position. Appellants are required to provide this court with a cohesive argument, with supporting authority, for this court to properly review. *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 50. Without having any of these requirements met, we are unable to review this argument. Petitioners assert that any unaccounted-for retirement checks should be considered misappropriated funds but provide absolutely no citations or evidence in the record to support such a conclusion. Thus, because petitioners have failed to comply with Illinois Supreme Court Rule 341, their argument as to any wrongful interference with inheritance is deemed waived. See Ill. S. Ct. R. 341 (eff. Oct. 1, 2020); *Maday*, 2018 IL App (1st) 180294, ¶ 50. Moreover, as the court found that there was no viable wrongful interference with inheritance claim and petitioners have failed to provide this court with a proper legal argument on this issue, their argument that they are entitled to attorney fees under this statute also fails.

¶ 44                                    III. CONCLUSION

¶ 45    For the reasons stated above, the judgment of the circuit court of La Salle County is affirmed.

¶ 46    Affirmed.

16